IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| UNITED STATES OF AMERICA, Plaintiff, v. DARYL KURESA, Defendant. | Case No. 16-cr-00744-DKW-2 **ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |
|---|---|

Defendant Daryl Kuresa moves for compassionate release from his sentence, pursuant to 18 U.S.C. Section 3582(c)(1)(A), on the basis that a range of medical conditions from which he suffers, in particular, blindness, render him unable to provide self-care in prison.   He also argues that a change in sentencing law and the threat of the coronavirus provide further reason for his immediate release.   The Court disagrees, in no small part because, other than the change in sentencing law, all of the issues of which Kuresa complains were known to and considered by the Court at the time of sentencing only 16 months ago.   In other words, the Court already took them into account in crafting the sentence Kuresa received and will not do so again.   As for the change in sentencing law, at best, it is entirely speculative that the same would result in Kuresa's far below guideline sentence

being lowered yet more.   Therefore, as more fully discussed herein, the motion for compassionate release, Dkt. No. 1010, is DENIED.

## RELEVANT BACKGROUND

On May 19, 2021, Kuresa was sentenced to 42 months' imprisonment after pleading guilty to conspiracy to distribute and to possess with the intent to distribute methamphetamine, together with a separate substantive distribution count.   Dkt. No. 875 at 1-3.   While describing Kuresa's term of imprisonment, the foregoing reveals nothing of how the Court arrived there.   The Court did so, first, by adopting the pre-sentence investigation report (PSR) at sentencing.   Dkt. No. 876 at 1.   As a result, Kuresa received a total offense level of 31, after being held responsible for at least 840 grams of "ice."   PSR at ¶¶ 43-44, 53.   With an offense level of 31 and a criminal history category of III, Kuresa's guideline imprisonment range was 135-168 months.   *Id*. at ¶ 112.   As mentioned, however, Kuresa did not receive a sentence in that range.   Instead, next, the Court considered and granted the government's motion for a downward departure (5K1.1) based upon the substantial assistance Kuresa had provided.   5/19/21 Sentencing Transcript at 8:13-17:23, Dkt. No. 998.   Specifically, the Court granted a seven-level reduction to Kuresa's total offense level, resulting in a new guideline imprisonment range of 63-78 months.   *Id*. at 17:23-25.   Again,

2

however, Kuresa did not receive a sentence in that range.   Instead, the Court also varied downward, ultimately arriving at Kuresa's 42-month imprisonment term. *Id*. at 24:22-24.   In doing so, the Court weighed a large number of mitigating and aggravating factors under 18 U.S.C. Section 3553(a).   Relevant to the present analysis, the Court observed that Kuresa had been blind since January 2017, he suffered from, *inter alia*, diabetes, high blood pressure, hypertension, and congestive heart failure, and received dialysis three times per week.   *Id*. at 20:19-21:3.   The Court further observed that Kuresa had tested positive for COVID-19 and suffered "significant" complications from the same, including an extended hospitalization.   *Id*. at 24:3-16.   The Court also noted that the programming available to Kuresa in prison might be limited due to his medical conditions.   *Id*. at 23:24-24:2.   The Court, therefore, found Kuresa's medical conditions to be "important" and "significant" in reaching his ultimate sentence.   *Id*. at 22:14-16, 23:1, 12, 24:23.

On August 4, 2022, Kuresa filed the instant motion for compassionate release ("motion").   Dkt. No. 1010.   The government has filed a response in opposition to the motion, Dkt. No. 1022, and Kuresa has filed a reply, Dkt. No. 1023.   This Order follows.

## LEGAL STANDARD

Pursuant to Section 3582(c), a court may not modify a term of imprisonment, except, as pertinent here, when: (1) the defendant exhausts administrative rights to the extent set forth in the statute;[1] (2) the Court considers the factors set forth in 18 U.S.C. Section 3553(a); and (3) the Court finds "extraordinary and compelling reasons warrant" a sentence reduction.   18 U.S.C. § 3582(c)(1)(A)(i).[2]

## DISCUSSION

Kuresa moves for compassionate release primarily on the basis of his blindness and the effect that condition has on his ability to provide self-care in prison.   Dkt. No. 1010-3 at 4-9.   The Court disagrees that Kuresa's blindness, or any of his other medical conditions, whether alone or in totality, warrant reducing his sentence once again.   As can be discerned from the "Background" section above, precisely the same conditions were considered by the Court in calculating

---

[1]The government does not dispute that Kuresa has exhausted his administrative remedies with respect to the instant motion.   Dkt. No. 1022 at 1.   Therefore, the Court does not further address exhaustion.

[2]The statute also requires that a sentence reduction be "consistent with applicable policy statements" of the U.S. Sentencing Commission, but the Ninth Circuit has concluded that an "applicable" policy statement does not exist for motions brought by a defendant under Section 3582(c)(1)(A).   *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).   Instead, the Sentencing Commission's statements "may inform a district court's discretion" in addressing motions brought under Section 3582(c)(1)(A).   *Id.*

Kuresa's individualized sentence.   Moreover, at sentencing, the Court was also more than aware of the unique challenges that Kuresa may face in prison, in particular, because of his blindness.   *See* Sent. Tr. at 23:12-24:2 ("So that's going to be a challenge that not every prisoner, in fact very few, have.").   Thus, the alleged fact that Kuresa may find conditions in prison, such as the lack of Braille, to be less than ideal does not move the needle and certainly does not constitute an extraordinary and compelling circumstance warranting release.[3]   The Court further considered at sentencing the possibility that Kuresa's ability to enter Bureau of Prisons (BOP) programming, such as RDAP, might be limited.   Thus, his assertion that he was unable to "timely enter" RDAP also fails to move the needle. *See* Dkt. No. 1010-3 at 5.[4]   The Court was also aware of and weighed the fact that Kuresa had contracted COVID-19 when it sentenced him.   In the instant motion, though, other than noting the continued presence of the coronavirus, Kuresa points to nothing that has changed since the time of his sentencing.   *See id*. at 11-12.[5]

---

[3]Another example of the less-than-ideal conditions that Kuresa flags is the lack of a "24/7 companion or orderly…."   Dkt. No. 1023-4 at 2.   The Court does not find the lack of such a companion to be an extraordinary and compelling circumstance warranting release.

[4]In this regard, Kuresa also fails to provide any context, such as how long it takes other prisoners to enter RDAP, for why his purported delay in doing so may be considered noteworthy.   The Court, for instance, is aware that there is frequently a waiting list to enter RDAP and that the BOP prioritizes for entry those who are closer to the end of their term of imprisonment.   That Kuresa had to wait approximately a year for entry into the RDAP program in light of these facts is hardly remarkable, much less extraordinary or compelling.

[5]As of the date of this Order, the BOP reported a total of one inmate and seven staff cases of coronavirus at Kuresa's place of incarceration–MCFP Springfield.   *See*

Therefore, the Court does not find this to be an extraordinary or compelling circumstance either.

This leaves Kuresa's reliance on a change in sentencing law that he says would have resulted in him being safety-valve eligible at sentencing. *Id*. at 9-11. He contends that, as a result, his offense level *may* have been reduced from 31 to 29 prior to the departure and variance he received, which, when factored in, *could* have resulted in a guideline imprisonment range of 30-37 months. *Id*. at 10 n.5. As can be observed from this argument, it is based entirely on speculation. Moreover, it is unpersuasive speculation in the context of this case. As the Court stated at sentencing, after weighing all of the mitigating and aggravating circumstances in this case, and the government's cooperation motion, a 42-month sentence was "where I feel justice is served." Sent. Tr. at 24:25-25:1. A potential two-level reduction in Kuresa's offense level does not alter the Court's calculus or, in the context here, constitute an extraordinary or compelling circumstance.[6]

---

https://www.bop.gov/coronavirus (last visited September 19, 2022). The Court also notes that MCFP Springfield is a federal *medical center* within the BOP system. *See* https://www.bop.gov/locations/spg.

[6]In the motion, Kuresa also appears to emphasize the assertion that, with safety-valve eligibility, he would not have been subject to a mandatory minimum sentence. *See* Dkt. No. 1010-3 at 10. But Kuresa was not subject to a mandatory minimum at sentencing (as a result of the government's 5K1.1 motion). This is how he was able to receive a sentence of 42 months' imprisonment−well below the statutory mandatory minimum sentence of 10 years.

Therefore, for the reasons set forth herein, Kuresa's motion for compassionate release, Dkt. No. 1010, is DENIED.[7]

IT IS SO ORDERED.

DATED: September 19, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

_United States of America v. Daryl Kuresa_, Cr. 16-00744 DKW-2; ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

---

[7]The Court, therefore, need not (and does not) address whether the Section 3553(a) factors would support Kuresa's release.